## BOWEN *v.* DECKER and another.

(*District Court, S. D. New York.* December 14, 1883.)

1. DEMURRAGE—UNSAFE BERTH—CHANGE—IDLE DAYS.

    The consignee of a vessel is bound to provide a safe berth. Where, by custom, the consignee has an allowance of three "idle days" in discharging a cargo of lumber, and he consumes them all before the discharge is begun, any subsequent want of readiness and delay in receiving the lumber at a different part of the dock, to which the vessel is compelled to go for safety from ice, will be at the risk and charge of the consignee, where it appears that such readiness might have been had in the first instance at the safe part of the dock.

2. SAME—ELEMENTS, WHEN NO DEFENSE.

    Though the change of berth was made necessary by the elements, the ice in this case in no way interfered with the consignee's getting ready to receive the cargo, and the ice was therefore no defense to them against a claim for demurrage, and did not extend the time, or idle days, allowed them to receive the cargo.

Action for Demurrage.

*Beebe & Wilcox,* for libelant.

*W. Howard Wait,* for respondents.

BROWN, J. On the fourteenth of February, 1881, the schooner F. E. Lawrence, loaded with 260,555 feet of lumber consigned to the respondents, arrived at their docks at the Jane-street pier. This pier was a very short one, and the north side of it was liable at that season to be rendered unsafe for vessels through floating ice coming in from the northward. The pier and bulk-heads were so incumbered with lumber that the schooner could not begin to unload until the 17th. On Sunday, the 20th, the schooner being somewhat injured by the invasion of ice, moved to the south side of the pier, where the pier and bulk-head were so filled up that no further discharge could be had until Wednesday, the 23d. At the time of removal I think the evidence shows that lumber could not be conveniently discharged on the northern bulk-head, through the schooner's ports, as is customary. The unlading was finished on March 7th. Nine working days, *i. e.,* at the average rate of 30,000 feet per day, is a reasonable and customary rate of discharge. Twenty-one days in all, including Sundays and holidays, were consumed. The respondents were bound to provide a safe place of discharge, either at the north or south side of the pier, as circumstances required. By the usage, which was not controverted in this case, they had the benefit of three idle days; but having consumed all of these at the outset, while the schooner was at the north side, the respondents cannot be allowed for the schooner's subsequent loss of time through their want of readiness to receive the lumber on the south side afterwards, when it became necessary to shift the schooner to the south side on account of ice. *Smith* v. *Yellow Pine Lumber,* 2 FED. REP. 396. From the injury to the schooner on the north side already received, the master was justified in removing her on Sunday, the 20th, to the south side to avoid the

ice.   In taking their three "idle days" to provide facilities for unloading at the north side, where the situation was uncertain as respects safety, the respondents took the risk of any further delay at the south side, if in fact it should become necessary to remove there. Though the danger at the north side arose "from the elements," it was not such as interfered in any way with the respondents' providing a safe place of delivery on the south side of the pier.   The cases cited by the respondents (*The Glover*, 1 Brown, Adm. 166; *Coombs* v. *Nolan*, 7 Ben. 301; *Fulton* v. *Blake*, 5 Biss. 371; *Cross* v. *Beard*, 26 N. Y. 85) are therefore not applicable to this case.

The evidence shows that the delay at the south side was at least two days, through want of readiness to receive the lumber.   The day which was too cold to work is not identified as one of these. One of them, however, February 22d, was a public holiday, which must be deducted.   Code, § 3343, sub. 21.   The respondents will therefore be held responsible for one day's delay, amounting to $40, with interest and costs.   There is no such preponderance of evidence as shows that the remaining three days' delay was through the respondents' fault.

Decree for $40, with interest and costs.